13328

DAVIS v. METROPOLITAN LIFE INSURANCE CO.

(162 S. E., 429)

*Messrs. Elliott, McLain, Wardlaw & Elliott,* for appellant.

*Messrs. A. C. DePass, H. M. Lightsey* and *C. T. Graydon,* for respondent,

January 14, 1932.

The opinion of the Court was delivered by Mr. Justice Stabler.

This action was brought by a certificate holder insured under a group policy of insurance issued by the defendant to the Southeastern Express Company on the lives of certain of its employees. The complaint alleged that the plaintiff, while in the employ of the company, the policy being in force and effect, "received an accidental gunshot wound in the left elbow, necessitating several operations on the joint of the elbow to save his arm, and resulting further in a stiff elbow joint with a draining sinus, which condition is permanent, thereby permanently, continuously, and wholly preventing the plaintiff from pursuing any and all gainful occupations of his employment, entitling him to the permanent disabilities provided for by said group policy of insurance, as the plaintiff had not reached the age of sixty years."

The company, by its answer, admitted the issuance of the certificate, but denied "that plaintiff had become wholly and permanently disabled so that he would be permanently prevented from performing any work for compensation or profit."

The defendant, on trial of the case, asked for a directed verdict on the following grounds: (1) "That the testimony clearly establishes that plaintiff is suffering only from a

partial disability, to-wit: a stiff elbow of one arm, and although this partial disability may prove to be permanent it cannot be considered as being total, whereas the terms of the policy specifically provide that plaintiff be totally and permanently disabled." And (2) "That the evidence clearly shows that plaintiff is now and has been for some time engaged in one or more occupations for compensation or profit, and that is the very thing the policy provides he must not be able to do in order to recover under the Total and Permanent Disability Clause."

The motion was overruled, and the jury found for the plaintiff. The appeal presents but one question: Did the Court commit error in refusing to direct a verdict?

The policy contained, among others, the following provision:

"On receipt by the Company at its home office of due proof that any Employee insured hereunder has become wholly and permanently disabled by accidental injury or disease, before attaining the age of sixty years, so that he is and will be permanently, continuously and wholly prevented thereby from performing any work for compensation or profit, the Company will waive the payment of each premium applicable to the insurance on the life of such disabled employee that may become payable thereafter under this Policy during such disability, and, in addition to such waiver, will pay to such employee during such disability, in full settlement of all obligations hereunder pertaining to such employee, and in lieu of the payment of insurance as herein provided, such monthly or yearly installments as may be selected by such employee by written notice to the Company at its home office on the following basis, to-wit:

"On basis of $1,000.00 of insurance either sixty monthly installments of $18.00," or a smaller number of installments of larger amounts.

"Permanent total disability" is thus defined in the certificate issued the insured by the defendant: "Under the terms' of the Group Policy mentioned on page one of this Certifi-

cate, any employee shall be considered totally and permanently disabled who furnishes due proof to the Company that, while insured thereunder and prior to his 60th birthday, he has become so disabled, as a result of bodily injury or disease, as to be prevented permanently from engaging in any occupation and performing any work for compensation or profit."

A proper conclusion as to what constitutes a "permanent total disability," under the contract of insurance before us, will furnish a test by which to determine whether the trial judge, under the testimony adduced, was correct in refusing defendant's motion for a directed verdict. This question has been considered and passed upon by this Court in a number of cases. *Brown v. Missouri State Life Ins. Co.,* 136 S. C., 90, 134 S. E., 224, 225; *Berry v. United Life & Accident Insurance Co.,* 120 S. C., 328, 113 S. E., 141, 142; *Taylor v. Southern State Life Ins. Co.,* 106 S. C., 356, 91 S. E., 326, 327 L. R. A., 1917-C, 910; *McCutchen v. Life Insurance Co.,* 153 S. C., 401, 151 S. E., 67, 78; *Gresham v. Aetna Life Insurance Co.,* 159 S. C., 326, 156 S. E., 878.

In the *Taylor case* it was held that under an insurance policy of this kind a person is "deemed totally disabled when he is no longer able to do his accustomed task, and such work as he has only been trained to do, and upon which he must depend for a living."

In the *Berry case* the Court quoted with approval: "The rule prevailing in most jurisdictions is that the 'total disability' contemplated by an accident insurance policy does not mean, as its literal construction would require, a state of absolute helplessness which can result only from loss of reason, since as long as one is in full possession of his mental faculties he is capable of transacting some part of his business, whatever it may be, although he is incapable of physical action. On the contrary, these Courts, giving consideration to the object of the contract, hold that the 'total disability' contemplated by the agreement is inability to do substantially all of the material acts necessary to the prosecu-

tion of the insured's business or occupation, in substantially his customary and usual manner."

In the *Brown case,* the Court quoted with approval the following from 14 R. C. L., 1316: "If the prosecution of the business required the insured to do several acts and perform several kinds of labor, and he is able to do and perform one only, he is as effectually disabled from performing his business as if he were unable to do anything required to be done, and while remaining in that condition he suffers loss of time in the business of his occupation. Nor does the provision contemplate absolute physical disability to transact any kind of business pertaining to one's occupation, but it is sufficient if his injuries are such that common care and prudence require him to desist from transacting any such business in order to effect a cure."

In the *McCutchen case* the Court has this to say:

"The contention of the appellant is that, in order to constitute such a disability, it is incumbent on the insured to establish such a present, continuing, and permanent disability as a result of accidental bodily injury or disease, as will permanently, continuously, and *wholly* prevent the insured from performing any work, or engaging in any occupation, avocation, or profession for wages, compensation, remuneration, or profit, or from engaging in any gainful occupation, even though he should be so disabled as to prevent him from *following* that accustomed trade or business for which he has been trained and equipped.

"The appellant's requests to charge were so constructed as to embody this view of the law which the presiding Judge should adopt as a proper instruction to the jury.

"The respondent contended that a permanent total disability in this policy did not mean a condition of absolute helplessness which results only from a loss of reason, but an inability to do substantially all the material acts necessary to the conduct or prosecution of the business or occupation of the insured in substantially his usual and customary manner; that if, in the prosecution of his business, he was

to do several acts and perform several kinds of labor, and he is thereby incapacitated to do and perform only one of such acts, he would be as effectually disabled from performing his business as if he were unable to do anything required to be done, if, while remaining in that condition, he suffers loss of time in the business of his occupation; that the words 'total disability' as used in the policy do not contemplate an absolute physical disability to transact any kind of business relating to one's occupation, but it is sufficient, if his injuries are such that common care and prudence require him to desist from transacting any such business, in order to effect a cure, or in order to prevent his business from becoming unprofitable; and that the insured is deemed 'totally disabled' when he is no longer able to do his customary tasks and such work as he has only been trained to do and upon which he must depend for a living.

"These last-mentioned views were embodied in the requests to charge of the respondent, and were substantially adopted and charged by the presiding Judge as a proper interpretation of such clauses."

And, after reviewing earlier cases, the Court said that it was obvious that the respondent's requests to charge were in absolute harmony, in the particulars in which they were questioned, with its own repeated utterances.

In the *Gresham case* the same construction of the term, "total permanent disability," was again sanctioned and approved.

With these principles in mind, we now proceed to examine the evidence in the case at bar.

The undisputed testimony—the defendant offered none—tended to show that the plaintiff when a boy did a little work; that he left school and went to the World War, and after his return therefrom was employed for a short while by the government, the American Railway Express Company, and the International Harvester Company, in that order; that in 1922 or 1923 he was employed by the Southeastern Express Company as a check clerk and worked in

that capacity for this company until December 12, 1927; that his duties as such employee required him, among other things, to lift and handle heavy trunks and packages, the use of both hands and both arms to do this work being necessary; that on December 12, 1927, while in the performance of his duties as such employee, he was accidentally shot in the left arm with a pistol in the hands of another employee, Osteen by name; that, at the time of the accident, Osteen was cleaning the pistol with "a black lead pencil and a rag" which he had inserted in its barrel, and when the pistol was discharged both the bullet and the pencil pierced the plaintiff's arm. The plaintiff testified that as he was trying to pull out the pencil it broke off in his arm; that he had to go to the hospital for treatment, that several operations were necessary, and that his arm had to be put in a silver brace. In response to the question as to how he had afterwards broken his arm, he replied: "After I went to the hospital the first time the bone crumbled up in it—in other words you call it broke—it rotted, whatever you want to call it." His testimony tended also to show that a drainage was developed, and that the wound caused, and still causes, constant pain and gave rise to an increasingly nervous condition; and that he was rendered entirely unable to perform the duties required by the position which he held with the express company, such duties being the work, according to his claim, that he had been especially trained to do in the several years he had been with that company. He further testified, as showing his utter helplessness and disability in some respects, that he had been rendered unable, by reason of his injuries, to even put on his own suspenders or to cut meat at the table, and that he had to be waited on by his wife as if he were a child.

Dr. Payne, who attended the plaintiff and treated him for several years, testified that, as a result of the injuries, several operations were necessary; that he had a permanently stiff elbow joint, which cannot be rectified by medical science; that the entire joint might be reset so as to give plaintiff a

false joint, but in all probability this would not improve the usefulness of his arm. He further testified that the entire elbow joint became infected from the wound and that this infection became chronic, causing a drainage for two or three years; that, by reason of this condition, plaintiff had absorbed during this time a considerable amount of poison which had pervaded and had a serious effect upon his entire nervous system; that plaintiff will never be able to lift any heavy weights with his left arm; and that his condition, brought about by his injury and the absorption of poison, will probably be permanent. There was also testimony to the effect that plaintiff, some time after the injury, tried, for as long as two days, to do the work required by his position with the express company, but was unable to do it and was forced to give up his job. There was testimony also that since that time he has done some light work, serving at the time of the trial as night watchman at the Columbia College, the duties of this position being "to go around and look after the grounds—look after fires—pull the lights and get up the mail," and that this position, which requires no physical use of his left arm, pays $60 per month.

The contention of the appellant, which it urges with great earnestness, is that even if the plaintiff's disability prove to be permanent, it is clear from the evidence that it is not total, within the meaning of the policy; and that, it being fully established by the testimony that plaintiff has been for some time and is now engaged in one or more occupations for compensation or profit, he cannot recover under the total and permanent disability clause of the policy.

We think, however, that the view taken by the trial Judge was correct. It might reasonably be inferred from the testimony that the plaintiff was rendered totally and permanently unable to do the customary tasks and work for which he had been trained and upon which he depended for a living; certainly, it was clearly shown that he could not, after the injury, do, in the main, those things required in the performance of the duties of the position he had previously held

with the express company. As pointed out in the *McCutchen case*, "what amounts to a total disability is a relative matter, and depends largely upon the circumstances of each case, and upon the occupation and employment in which the person insured is engaged." See 1 C. J., 462. It is true that the testimony shows that the plaintiff has, at times since his injury, been engaged in some light work, and that at the time of the trial he was being paid $60.00 per month as night watchman at the Columbia College. Still, it also shows that, with regard to the position held by him with the express company for a number of years, and which was the work that he was trained to do and upon which he depended for a living, he is totally disabled; it appears also from the record that he applied to that company for a job, the duties of which would not require the physical fitness demanded of him by the one that he held prior to his injury, but was told that the company had no job of that kind. We think that, in view of this Court's construction of the phrase, "total permanent disability," appearing in insurance contracts similar to the one before us, the trial Judge was bound, under the testimony adduced, to overrule the defendant's motion for a directed verdict and to submit to the jury the question of plaintiff's "total disability."

The judgment below is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM concur.

MR. JUSTICE COTHRAN did not participate on account of illness.