13443

DuRANT v. AETNA LIFE INSURANCE CO.

(164 S. E., 881)

*Messrs. McKay & Manning,* for appellant,

*Messrs. U. L. Rast* and *C. T. Graydon,* for respondent,

July 16, 1932.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The respondent was employed at Pacific Mills, Columbia, S. C., and was insured under a group policy which provided that, if any employee of the Mill, before attaining the age of 60 years, or while insured under their policy, *became totally disabled and therefore was unable to engage in any occupation or employment for wage or profit* (italics added), he should be entitled to receive from the insurance company the sum of $1,000.00. Plaintiff by his complaint alleged that while he was in the employ of the Pacific Mills, and before he attained the age of 60 years, to wit, on or about the 19th day of June, 1930, he became totally and permanently disabled under the conditions and terms of said policy. The company refused to pay him, and he brought this action. On motion of defendant plaintiff was required to make his complaint more definite and certain by stating the nature and cause of his alleged disability. The amended complaint set forth that the alleged total and permanent disability was a result of high blood pressure, chronic myocarditis, chronic interstitial nephritis, and syphilis. The answer to the amended complaint was a general denial.

The case was heard by Judge Whaley in the County Court of Richland County, with a jury. At the close of the testimony for plaintiff, counsel for defendant made a motion for nonsuit on the ground that "there is not sufficient evidence of total and permanent disability."

The motion was refused; the presiding Judge saying: "That makes a matter of evidence for a very weak case, but it does not make his evidence fall down, so as to say there is none. Under the doctor's testimony, I keep in mind when I handle a matter as a question of law, where there is something very obvious, such as that foot and bone case, but when it comes to a matter of disease the doctor has to tell me about that. If he says that is there and permanently, the fact that a man goes ahead and works from time to time is no evidence that has to be set up against what the doctor says and that can overcome it entirely. I cannot do that. There is evidence to go to the jury. Of course, all that evidence weakens his case and weakens the doctor's conclusion, but it is for the jury to weigh and not for me."

At the conclusion of all the testimony defendant's counsel made a motion for directed verdict for defendant on the same grounds upon which the motion for nonsuit was predicated and the additional ground that "it is now shown that this policy of insurance was cancelled prior to the time the man became disabled." The motion was refused.

The jury found for the plaintiff the amount sued for. Motion for new trial was denied. This appeal followed.

There are four exceptions. Appellant's counsel in their brief say: "All four exceptions may be grouped under one heading: There was not sufficient evidence of total and permanent disability on 28th of June, 1930, to warrant that issue being submitted to the jury in view of the undisputed facts that a month thereafter plaintiff was able to begin work and continue almost uninterruptedly for approximately eight weeks, when he was discharged for drinking on the job."

The Court is confronted in this appeal with the decision of the question whether a medical theory of the total and permanent disability of a person is potent to overcome the undisputed evidence of the physical fact that the person was able, after he was alleged to be disabled, to

perform the same sort of work he was always accustomed to do.

The plaintiff was discharged from his employment the 19th day of June, 1930. He alleges in his complaint that on or about that very day he became totally and permanently disabled under the terms of the policy, which terms are that such disability rendered him unable to engage in any occupation or employment for wage or profit. His medical witness says this is so because plaintiff had high blood pressure, myocarditis, interstitional nephritis, and syphilis, and had had these since he first examined him in February, 1930. Yet he worked from then till he was discharged on June 19th, and again when employed for eight weeks at similar work.

In the case of *Davis v. Metropolitan Life Insurance Co.,* 164 S. C., 444, 162 S. E., 429, 431 (the last utterance of this Court on this subject), the Court said: "the insured is deemed 'totally disabled' when he is no longer able to do his customary tasks and such work as he has only been trained to do and upon which he must depend for a living."

In that case Davis was in the employ of the express company, which employment required him to lift and handle heavy trunks and express packages which required the use of both hands and arms. He was accidentally shot in one arm from which he lost the use of it to a large degree, and was rendered unable to perform the work required in his former position. He subsequently secured light work as night watchman, the duties of which were "to go around and look after the grounds—look after fires—pull the lights and get up the mail."

In the present case, after the time plaintiff was declared to be totally disabled, he continued for eight weeks to do the very sort of work he was accustomed to do up to the middle of September, about five and a half months before he brought this action. In March, 1931, he fixes the period at which he became totally disabled as June 19, 1930, the day of his discharge. His policy expired June 30, 1930.

Was there evidence of total and permanent disability aside from the medical theory to send the case to the jury? Plaintiff and Mr. Ryalls, his employer, were the only other witnesses in his behalf. Describing his pains, plaintiff said: "I would have drunk headaches and blind spells and hurting around my heart." On cross-examination of him, this occurred:

"Didn't they turn you off because you were drinking on the job? That's what he said he run me off for.

"That is what he told you? Yes, sir.

"He ran you off, told you you were drinking on the job? Yes, sir.

"You didn't have to be told that, you knew you were drinking on the job? I drink a little whiskey.

"I am talking about that occasion, didn't they run you off because they saw you were drunk? That's what he said he did.

"You were drinking? I had taken a drink before I left home.

"And he caught you—now that was in May last—1930 was it not? Yes, sir.

"Wasn't it in September, 1930, that they ran you off for drinking? Yes, sir.

"You were working at the Capital City when they ran you off? Yes, sir."

Mr. Ryalls, under whom he worked, testified that plaintiff did odd jobs around outside of the mill; that he was always looking for easy jobs; said he was not able to carry a pipe that did not weigh over 100 pounds; wanted to go out and work with the men on the street cutting grass and light work like that. Witness discharged him for loafing on his job. Witness had the impression plaintiff was a lazy negro trying to get an easy job. Did not know whether he was sick or not. Witness did not think he was; that the only time he ever complained to witness of being sick was when he caught him loitering at the rest place where the men eat .

dinner. As far as witness could tell he looked like he was all right all the time.

It is impossible to read the evidence of plaintiff and his witness Ryalls without coming to the conclusion that he was a malingerer, shirking hard work. And, conceding that he had the physical ailments which his medical witness says he had, the only reasonable inference which could be drawn from the evidence is that he was able to do, and did, the very class of work he was accustomed to do up to the very day of his discharge and the day he claims to have become disabled *and for eight weeks thereafter when he was discharged for drinking on the job*. He says he did no work from the middle of September, 1930, till the time of the trial, but he does not testify, nor does any one in his behalf, that he endeavored to get work, or tried to work. He does say he was unable to work.

The conclusion is inescapable that plaintiff was not disabled totally and permanently within the terms of the policy of insurance.

It was error not to grant the motion for directed verdict in favor of the defendant.

It is the judgment of the Court that the judgment of the lower Court be, and is, reversed, and the case is remanded to that Court, with direction to enter judgment for defendant under Rule 27 of this Court.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur.