## 13830

MORGAN v. TRAVELERS' INS. CO.

(Two cases)

(174 S. E., 235)

Before GRIMBALL, J., Laurens, October, 1932.

*Messrs. Huff & Huff* and *R. E. Babb,* for appellants,

*Messrs. Grier, Park, McDonald & Todd,* for respondent,

April 14, 1934.

The opinion of the Court was delivered by MR. W. C. COTHRAN, ACTING ASSOCIATE JUSTICE.

In the trial of the two cases involved in this appeal, the Circuit Judge directed the jury to write the verdicts for the defendant in each case. This being done and judgments upon the verdicts being duly entered, the plaintiff has appealed to this Court from the judgments.

There is only one exception, and it charges error on the part of the Circuit Judge in directing verdicts for the defendant. It is claimed by the appellant that there was sufficient proof to go to the jury upon the question of total disability of the plaintiff and her husband during the effective life of the policy. A careful examination of the testimony and a somewhat detailed statement of the facts as proven will be necessary in order that a right conclusion be reached in this opinion.

In the beginning we may say that the definition of "total disability" as so often pronounced by this Court is hereby again adopted and will be adhered to strictly in this opinion.

On June 2, 1932, two suits were brought in the Court of Common Pleas for Laurens County against the defendant, the one by Carrie Lee Morgan and the other by Will Morgan, both suits claiming disability benefits under a group policy issued by the defendant as evidenced by certificates held by each. The group policy was taken out by Ware Shoals Manufacturing Company. Before either suit was brought to trial, Will Morgan died, and the complaint brought by him was amended; his wife, Carrie Lee Morgan, the beneficiary, being substituted as plaintiff. The cause of action was not changed, the substituted plaintiff claiming disability benefits and not death benefits. At the October, 1932, term of the Court the cases were tried, with the result before mentioned.

Carrie Lee Morgan and Will Morgan, husband and wife, were employed by Ware Shoals Manufacturing Company in 1930, and under a policy of group insurance certificates were issued to the former on March 11, 1930, and to the latter on March 10, 1930. Carrie Lee Morgan claims to have

been totally disabled in August, 1930, but no claim was made, for said disability and no proofs of same submitted until March 1, 1932. The policy expired in August, 1930. The claim of Will Morgan was that he was also totally disabled in August, 1930, while the policy was of force, but his claim for benefits thereunder and his proofs of disability were not filed until March 1, 1932.

During July of 1930, many employees of the Ware Shoals Mill were deprived of their accustomed work and owing to the prevalent depression night work was suspended. In order that some work might be given to all, the overseer spread out the work as much as possible for the benefit of those who had been employed to work at night, the Morgans being in this number, and the Morgans worked from time to time during the remainder of July and a part of August. While working regularly the overseer says that they both made average "time" and that neither complained of any disability whatsoever.

About the first of September, 1930, the family, consisting of Mr. and Mrs. Morgan, their son and daughter, moved to Clinton, S. C., of their own accord and secured work in the mill at that place. The policy of insurance was then canceled, not only for the reason that no further premiums were paid, but also because the Morgans were no longer employees of Ware Shoals Manufacturing Company, as provided in the policy. The move to Clinton was made for the reasons that regular work could be obtained there and house rent was cheaper. At Ware Shoals Mrs. Morgan kept house for the family and worked in the mill as a "quarter hand," taking the place of regular employees when they were out for the noon hour. In this way she worked only two or three hours each day. Mr. Morgan, apparently, worked regularly while at Ware Shoals until the night work was discontinued.

At Clinton the entire family was employed; the father, son, and daughter working regularly, and the mother again

working as a "quarter hand." The pay roll record for Mr. Morgan shows that his work began in Clinton in September, 1930, and that his first week of work ended on September 20th. For that week he worked five days; for the week ending September 27th he worked five days; and so on, missing a day now and then until July 13, 1932. He dropped dead on July 29, 1932.

Mrs. Morgan worked more hours at Clinton per week than she did at Ware Shoals. The record shows that she worked from February, 1931, through July, 1931, and also through the remaining months of 1931. She also worked in January, March, May and June of 1932.

Testimony by physicians was offered by the plaintiff to show the physical condition of both of the Morgans. It appears from their testimony, using plain words rather than technical terms, that they had suffered from defective heart action and diseased kidneys, the high blood pressure of both being but the evidence of more serious complications. However, these examinations were made long after the policy had lapsed under which the claims were made.

In addition to this testimony of the physicians, the plaintiff testified that while they lived at Ware Shoals she and her husband were examined by a Dr. Williamson and that this doctor said they both had high blood pressure and heart trouble and he advised her to stop work. The policy was then in force.

The policy provided: "If any Employee shall furnish the Company with due proof that while insured under this policy and before having attained the age of sixty, he has become wholly disabled by bodily injuries or disease, and will be permanently, continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit, the Company will waive further payment of premium as to such employee and pay in full settlement of all obligations to him under this policy the amount of in-

surance in force hereunder upon his life at the time of the receipt of due proofs of such disability."

There is an insurmountable difficulty to the progress of the appellant in this case. It is the case of *Hickman v. Insurance Co.,* 166 S. C., 316, 164 S. E., 878, 880. We will discuss this case briefly as applicable to the facts of the case now under consideration.

There is a marked similarity in the facts of the present case and the facts of the *Hickman case* and the principle of law is identical. In both cases a physician was of the expressed opinion that a disability existed; in both cases the plaintiff continued to do customary work after the total disability was supposed to exist; in both cases the policy lapsed for nonpayment of premiums. A recovery was denied in the *Hickman case,* the Court saying: "While it appeared that plaintiff was seriously afflicted, there was no evidence upon which the jury could have predicated a finding that she was 'totally disabled,' under the court's construction of that term as used in a policy of this kind, before or at the time of the cancellation of her insurance."

As the present case appears to come directly under the principle announced in the *Hickman case.* it follows that the judgment of the Circuit Court must be sustained.

Judgment affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.