14029

SMOAK v. SOUTHEASTERN LIFE INS. CO.

(179 S. E., 56)

*Messrs. Howell & Fishburne* and *Haynsworth & Haynsworth,* for appellant,

*Messrs I. A. Smoak* and *Padgett & Moorer,* for respondent

March 27, 1935.

The opinion of the Court was delivered by Mr. C. J. RAMAGE, ACTING ASSOCIATE JUSTICE.

The only real question presented by this appeal is: Was there any evidence to take the case to the jury on the issue of the insured's total and permanent disability? All the points made center about this one question.

The policy provides, among other things, that "upon receipt of proof satisfactory to the company of * * * the loss of both hands at or above the wrist * * * or that he (the insured) has become wholly disabled by bodily injuries * * * and will be permanently, continuously and wholly prevented thereby for life from pursuing any gainful occupations," he would be entitled to certain payments and benefits set out in the contract of insurance. The complaint alleged that while the policy was in force, due to an accident received by the plaintiff on August 12, 1926, he sustained the loss of both hands at or above the wrist; and further alleged that due to such injury, the insured has become permanently, continuously, and totally disabled.

There have been many decisions revolving around the matter of these disability contracts made by insurance companies; but in every case "the facts make the law," to use an expression of the distinguished lawyer, Mr. Justice Gage, whose intellect was great but whose character as a man was even greater.

In *Berry v. United Life & Acc. Insurance Co.,* 120 S. C., 328, 113 S. E., 141, the Court defined "total disability" as not meaning a state of absolute helplessness. In *McCutchen v. Pacific Mut. Life Insurance Co.,* 153 S. C., 401, 151

S. E., 67, the Court held, quoting syllabus: "Policy insuring against permanent total disability from injury or disease, inability to do substantially all material acts necessary to conduct or prosecution of business or occupation in substantially the usual and customary manner constitutes 'permanent total disability,' and absolute helplessness is not necessary."

In *Brown v. Missouri State Life Insurance Co.,* 136 S. C., 90, 134 S. E., 224, 225, it is said: "If the prosecution of the business required the insured to do several acts and perform several kinds of labor, and he is able to do and perform one only, he is as effectually disabled from performing his business as if he were unable to do anything required to be done, and while remaining in that condition he suffers loss of time in the business of his occupation. Nor does the provision contemplate absolute physical disability to transact any kind of business pertaining to one's occupation, but it is sufficient if his injuries are such that common care and prudence require him to desist from transacting any such business in order to effect a cure."

See, also, *Taylor v. Insurance Co.,* 106 S. C., 356, 91 S. E., 326, L. R. A., 1917-C, 910; *Gresham v. Insurance Co.,* 159 S. C., 326, 156 S. E., 878; *Davis v. Insurance Co.,* 164 S. C., 444, 162 S. E., 429; *Caldwell v. Insurance Co.,* 170 S. C., 294, 170 S. E., 349; *Jones v. Insurance Co.,* 173 S. C., 213, 175 S. E., 425.

The only question here is, as we have stated: Was there any evidence which, by fair interpretation, would authorize the jury to render a verdict for the plaintiff? Before entering into a discussion of the testimony, however, we will dispose of the following question asked plaintiff and his answer:

"Q. And you have never contended you were totally incapacitated? A. No, sir. I am not wholly incapacitated."

In the first place, the plaintiff evidently had the idea of absolute helplessness when he used these words. But this

Court has time and again said that this is not the test. The real test has been all along laid down as set out in the quotations given above. In the second place, the law does not make him the absolute judge of the issues in the case, but wisely leaves this to the jury; and in the third place, this statement goes to the jury along with the other testimony and the effect of it is to affect his credibility, and the jury may give it such weight as they may see fit on the question as to whether or not this statement destroys the other testimony.

It appears from the evidence that plaintiff was injured when a car in which he was riding collided with a truck loaded with hot asphalt which was pitched upon the occupants of the car, and that plaintiff's hands were cooked, as was the back of his neck, and his arm was broken; that his work as a minister and preacher required him to do much traveling in a car, in several cases his churches being as much as twenty-four miles apart; and that he had to do much driving in going from place to place to preach, in visiting his members, and in going to the various church meetings. It was in testimony that his power to grip any object with his hands was ruined and that when he attempts to do so a sharp pain shoots through his hands. It is a matter of reason and common knowledge that such a defect in the power to grip and catch and hold an object would seriously interfere with the power to drive a car; that it would not only hinder his going from place to place, but in case of an emergency might endanger his own life or the lives of others; that driving is a substantial part of the preacher's business, as it is necessary to get from his home to the church in order to deliver the message; and all these matters were for the jury under the evidence in the case, under a fair interpretation of the testimony.

We feel that we might safely rest the case here under the law as heretofore laid down by the Courts. However, it was further in testimony that his power

to write was substantially impaired, and we know as a matter of common knowledge that a minister has on occassion to write out sermons, reports, and resolutions for the various church bodies and assemblies, and on occasion it is necessary to write letters of condolence to members of the church or their families and others in an official capacity. His work and standing as a minister are largely affected by his ability to write. It was also in testimony that his inability to grip also affected his power to administer the sacraments and to perform the rites of baptism; that he was no longer able to handle books and papers with any degree of satisfaction; that his power to use his hands in eating has been impaired; that his nervous system has been deranged; and that his finger nails were lost and his condition has grown worse in the last few years—absolutely worse.

The physician testified that the burns were severe, third-degree burns, destroying the deeper tissues and causing the death of the tissues of the hands; that he had a complete fracture of the arm and that his condition is worse than it was two years ago, and that very little change for the better is likely to result; that the loss of the use of the hands would be total and permanent; that this results from the loss of that tissue, the destruction of the nerves immediately below the skin; that he can harly close his hands to do manual labor, or write, or feed himself, or hold a book In short, that he has been substantially deprived of the use of both hands, and that this is going to be permanent.

The testimony of plaintiff, taken in connection with ■ that of the physicians and of the appearance of the pictures introduced in evidence, clearly makes a jury issue here. Such being the case, all the exceptions ought to be overruled.

In the case of *Marshall v. Kansas City Life Insurance Co.*, 171 S. C., 321, 172 S. E., 504, 506, the Court said: "It is true the insured lost only one hand but, in our opinion, the

fact that he did not lose both hands or one hand and one foot did not preclude him from recovering under the policy for total and permanent disability, if the facts in the case, to be determined from the testimony, which was a jury question, show that he had by loss of one hand or in some other way become totally and permanently disabled, within the meaning of the provisions of the policy, under the rule declared in the case of *McCutchen v. Pacific Mutual Life Insurance Company, supra,* and *Davis v Metropolitan Life Insurance Company, supra."*

In L. R. A., 1915-D, page 264, note, the author says, considering provisions against loss of hands or feet, generally: "It has been a common contention of insurers that a recovery could not be had under accident policies insuring generally against the 'loss' of hands or feet, where there has been no amputation or severance from the body of the injured member. The Courts, however, have as a rule refused to give such meaning to these provisions, and have held that under them a recovery may be had if the insured, by reason of his injury, has been deprived of the use of the member."

The instant case is clearly differentiated in its governing facts from *Hickman v. Insurance Co.,* 166 S. C., 316, 164 S. E., 878; *DuRant v. Insurance Co.,* 166 S. C., 367, 164 S. E., 881; and *Morgan v. Insurance Co.,* 172 S. C., 404, 174 S. E., 235. It comes under the *Berry* and *Brown cases, supra,* and other cases along the same line.

This opinion being concurred in by a majority of the Justices, it becomes the judgment of the Court, which is that the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE CARTER concur.

MR. JUSTICE BONHAM and MR. ACTING ASSOCIATE JUSTICE E. C. DENNIS, Circuit Judge, dissent.

MR. JUSTICE BONHAM (dissenting): The first reaction of the writer of this opinion to the argument in this case on

appeal was that the judgment should be affirmed. A pains-taking consideration of the evidence and study of the law have forced, reluctantly, the contrary conclusion. The circumstances are such as excite sympathy for the excellent man who has suffered grievous hurt and pain, but these considerations may not be allowed to sway the opinion of the Court in the face of law and evidence which point with unerring certainty another way.

The respondent is a Methodist minister, engaged in his calling under the jurisdiction of the Conference of the Methodist Church. In August, 1926, he suffered an injury through a collision between the automobile in which he was riding and a truck, by which hot asphalt was cast upon him, burning him severely especially upon his hands. He was insured in the appellant insurance company under a policy which carried a "disability clause," which is set out in the complaint in the following language: "Upon the receipt of proof satisfactory to the company of the total and permanent blindness of the insured, or the loss of both hands at or above the wrist; or the loss of both feet at or above the ankle; or of the loss of one limb and one eye; or the loss of one hand at or above the wrist and of one foot at or above the ankle; or that he has become wholly disabled by bodily injuries, loss of reason or disease, and will be permanently, continuously and wholly prevented thereby for life from pursuing any and all gainful occupations, after one full annual payment shall have been made and before a default in the payment of any subsequent premium, provided that such total and permanent disability shall occur before the insured attains the age of sixty years the Company by endorsement in writing on this contract will, at the option of the insured, either   *   *   *."

Proofs of injury were duly furnished the company and claim made for indemnity under the terms of the policy on the ground of total and permanent disability. The specifications of the grounds upon which the claim is based, are thus set forth in the complaint: "That on August 12, 1926,

by reason of an accident, the plaintiff herein had his right arm broken, both of his hands seriously burned and otherwise injured and wounded, and on account of said burns on his hands he has totally lost both of his hands above the wrist, and has thereby become permanently and totally disabled."

The defendant, by answer, admitted the issuance of the policy by it and the correctness of the quotation therefrom contained in the complaint; admitted that on the date named plaintiff had his right arm broken and both hands severely burned and injured; but denies that "on account of said burns on his hands he has totally lost both of his hands above the wrist and has thereby become continuously, permanently and totally disabled." Admitted the demand for payment and the refusal thereof, and denies all other allegations of the complaint.

The case was tried by Judge Rice, with a jury, at the spring term, 1928, of the Court of Common Pleas for Colleton County, and a verdict was rendered for plaintiff.

At the conclusion of all of the testimony, the defendant moved for the direction of a verdict upon the ground that: "There is no evidence to go to the jury in support of the allegations of the complaint of a total and permanent disability, and no reasonable inference can be drawn from the testimony upon which an inference could be based other than to the effect there was a total lack of proof going to sustain the complaint, and on the contrary it shows only a partial disability."

This motion was refused, as was the motion for new trial.

The defendant appeals upon eight exceptions, but the attorneys for appellant treat the appeal as, in fact and law, making one cardinal and controlling question stated under two headings, to wit:

"(e) That the only reasonable inference to be drawn from the testimony is that the respondent is not entitled to recover under the terms of the policy, the allegations of the complaint

and the law, and there was no evidence upon which the jury could have predicated a finding that the respondent has suffered the loss of both hands at or above the wrist, or has by reason of bodily injury, as alleged in the complaint, become continuously, permanently and totally disabled under the provisions of the policy and the law of South Carolina.

"(f) The testimony affirmatively and conclusively shows that the respondent has not suffered the loss of both hands at or above the wrist, and has not become by reason of bodily injuries continuously, permanently and totally disabled, but that on the contrary the respondent has and enjoys the use of both hands and is not totally disabled."

It is not contended by respondent's counsel that respondent has lost both his hands by actual severance at or above the wrist, but that his injuries bring him within the provisions of the policy relating thereto.

The most reasonable construction of this contract of insurance we have found is thus stated by the Supreme Court of Michigan in *Fuller v. Life & Accident Ins. Asso.,* reported in 122 Mich., 548, 81 N. W., 326, 328, 48 L. R. A., 86, 80 Am. St. Rep., 598, and supported by cases there cited: "It has been contended on behalf of the insurance companies that the provisions in regard to the 'loss' of the hands and feet must be understood to imply an actual amputation or physical severance of these members from the body. But this view has not met with favor from the Courts; it being held that, to entitle the insured to recover, physical severance is unnecessary, but it is sufficient if he has been deprived entirely of the use of the feet and hands as members of the body."

Our examination convinces us that this is the view accepted by the Courts of the majority of the states.

The issue, then, is: Has the plaintiff proved that by reason of the burns thus suffered he has so lost the use of his hands as to be permanently and totally disabled?

The definition of "total disability" adopted by this Court is thus stated in *McCutchen v. Pacific Mut. Life Ins. Co.,* 153 S. C., 401, 151 S. E., 67, 77: " 'Total disability' * * * is inability to do substantially all of the material acts necessary to the prosecution of the insured's business or occupation, in substantially his customary and usual manner."

It is necessary in the solution of our problem to determine whether the respondent is "totally and permanently disabled" within the purview of this definition.

Respondent was, up to the fall of 1921, a farmer, at which time he changed his occupation.

"Q. Mr. Smoak, what is your calling? I belong to the Itinerary of the Methodist Church."

It does not appear that since that time he has been engaged in any other calling, or occupation. In other words, he depends entirely upon his stipend as a minister of the gospel for the support of himself and his family. He is still engaged in that calling and is still within the jurisdiction of the Methodist Church, and under the wonderful system of government of that church, by which its clergy are assigned to parochial work, is being regularly assigned to his various charges, which usually consist of more than one church which are sometimes miles apart. This necessitates the use of an automobile to reach his various charges. He drives his car. It is true he says that he does so with inconvenience and some pain. Nevertheless, he does it. He says that he can write and does so, but not with the facility he formerly did; that he uses his knife and fork to feed himself, not with the usual comfort; that he cannot handle his books as well as he formerly could, but he handles them. He testifies that he used to do the repair work on his car, and he is now unable to do so; that he worked a garden, built the chicken coops, cut wood, and milked the cow, and now is unable to do these things. There is no evidence that he is put to any expense by having to hire someone to do these things in his stead. Two or three physicians tes-

tified that in their opinion he was totally disabled. One of them said respondent could not use his hands to feed himself. Respondent testified that he does use them for that purpose. He further testified that his arm was healed, though the use of his hands, especially in driving his car, caused pain to the arm, because he cannot grip anything and cannot completely close his hand. He uses gloves in driving because his fingers are sensitive. He was asked: "In what way have you been impaired in performing your ministrial duties in the church? A. *I have not been able to write— for a period* of time after this accident, I could *not write at all scarcely and at all. I have not been able to handle my books and papers intelligently and with as much ease and comfort, and naturally that brought a certain amount of impairment on me even in delivering my message from the pulpit. Now in administering baptism, naturally I was not able to handle the baptism ceremony with all the satisfaction to myself as I could before I was injured. When I go to the table I have to be very particular in handling my saucer. and at the table I cannot use my knife and fork, as I could before. Now, even when we have our communion service the strength in my hands is not what it was and I seem to get very nervous.*" (Italics added.)

Here is respondent's own recitation of the effects of his burns. Can it be said that this shows a state of total disability as defined by our Courts? This good man is truly incommoded by his misfortune, but he is still pursuing his calling, upon which he depends for a living, in substantially the way he did before he was injured. Many persons suffering from worse physical handicaps than he are living by physical labor. Despite the fact that doctors have said he is totally disabled, he says otherwise.

"Q. Mr. Smoak, you have never claimed that you were totally disabled and totally incapacitated? A. What do you mean by that, Mr. Fishburne?

"Q. I mean by reason of the injury to your hands. A. *By reason of the injury to my hands I have been incapacitated from doing certain things around my house.*

"Q. *And you have never contended you were totally incapacitated? A. No, sir. I am not wholly incapacitated.*" (Italics added.)

The case of *United States v. Spaulding,* 293 U. S., 498, 55 S. Ct., 273, 276, 79 L. Ed.,——, decided January 7, 1935, was an action brought on a war risk insurance policy which contained a total and permanent disability clause. Physicians testified that the claimant was totally and permanently disabled. There was evidence that claimant had pursued gainful occupations during the period of his alleged total disability. Delivering the opinion of the Supreme Court of the United States, Mr. Justice Butler said: "The medical opinions that respondent became totally and permanently disabled before his policy lapsed are without weight."

See, also, *Harris v. United States* (C. C. A.), 70 F. (2d), 889.

"It was pointed out that whether disability caused by disease be of a permanent character or not is to be determined not exclusively from the diagnosis made or the opinions given by physicians at the outset of the disease, but from its history 'and all the evidence in the case.' " *Carter v. United States* (C. C. A., 4), 49 F. (2d), 221.

In the case of *DuRant v. Ætna Life Ins. Co.,* 166 S. C., 367, 164 S. E., 881, 882, a medical witness testified that the plaintiff was examined by him and found to be totally disabled, six months before his discharge from his employment. Nevertheless, the evidence showed that for six months after such examination he did the work he had always done in that employment. The Court said: "Conceding that he had the physical ailments which his medical witness says he had, the only reasonable inference which could be drawn from the evidence is that he was able to do, and did, the very class of work he was accustomed to do up to the very day of

his discharge and the day he claims to have become disabled *and for eight weeks thereafter when he was discharged for drinking on the job.* \* \* \* The conclusion is inescapable that plaintiff was not disabled totally and permanently within the terms of the policy of insurance. "

In the case of *Hickman v. Ætna Life Ins. Co.*, 166 S. C., 316, 164 S. E., 878, 880, this Court said: "Dr. Roof testified that he saw her for the first time in the winter of 1927-1928, and that she was then 'what I would call totally disabled.' Exactly what he meant by that expression is not clear. The Court will assume, in the face of certain physical facts, that he did not intend to imply that she was reduced to a state of utter helplessness; he clearly had in mind some less strict standard of total disability. If he meant, however, the language used to have the significance given to the expression 'total permanent disability' by this Court in its construction of that term as used in insurance contracts of this kind, *then the admitted fact that plaintiff continued to do her customary work in the usual manner, though perhaps intermittently, for several years thereafter, shows his statement to be absolutely erroneous. In other words in the face of this fact the statement of the witness was a mere assertion or expression of opinion of no probative value, and could not create an issue of fact as to plaintiff's total disability.*" (Italics added.)

In the case of *Morgan v. Travelers' Ins. Co.*, 172 S. C., 404, 174 S. E., 235, 237, which is an action on a policy carrying the total and permanent disability clause, this Court said: "There is a marked similarity in the facts of the present case and the facts of the *Hickman case* and the principle of law is identical. In both cases a physician was of the expressed opinion that a disability existed; in both cases the plaintiff continued to do customary work after the total disability was supposed to exist."

Recovery was denied in each case.

The analogy between the facts and the law of these three case and the present case makes them conclusive authority in this case.

It is thought that the cases below mentioned are authoritative in support of respondent's position in this case. We do not concur in that view.

In the case of *Dukes v. Jefferson Standard Life Ins. Co.,* 172 S. C., 502, 174 S. E., 463, it appears that Dukes had become paralyzed and was incapable of physical work. He had been re-elected sheriff of the county after becoming thus paralyzed. The contention was that he was still the sheriff of the county and engaged in the duties of the office. The proof was that the duties of the office were performed by deputies, employed by him, and that it took his income from his office to pay them; that his main occupation was that of farming, and by reason of his physical condition he was unable to follow that occupation.

In the case of *Caldwell v. Volunteer State Life Ins. Co.,* 170 S. C., 294, 170 S. E., 349, 351, the plaintiff was clerk of Court, and it was contended that he still went to his office and attended to some of the duties of his office; the proof was that because of growing mental infirmity he was only permitted to do perfunctory things which required no mental effort, such as signing formal papers. A committee was appointed for him.

In *Marshall v. Kansas City Life Ins. Co.,* 171 S. C., 321, 172 S. E., 504, the proof showed that plaintiff, who was a small farmer dependent on his own labor, had lost, by accident, four fingers from his left hand and could no longer plow, pick cotton, and do the other things needful to be done in farming; that he had to curtail his farming operations and had to hire labor to assist him in them.

We think that these cases do not sustain respondent in the present case. Indeed, they sustain the contrary view. Here it is patent from respondent's own testimony that he is still engaged in the performance of the duties of his avoca-

tion, that of a minister of the gospel, substantially in the way in which he performed them before he suffered injury. True he suffered inconvenience and pain, nevertheless, he still pursues his calling.

It is impossible to escape the conclusion that his disability is only partial and does not come within the definition of total and permanent disability recognized by this Court.

The motion for directed verdict should have been granted.

The judgment should be reversed, and the case remanded, with instruction to enter judgment for defendant.

MR. ACTING ASSOCIATE JUSTICE E. C. DENNIS, Circuit Judge, concurs.