14115

STEWART v. PIONEER PYRAMID LIFE INS. CO.

(180 S. E., 889)

*Messrs. Mann & Arnold,* for appellant,

*Messrs. Nettles & Poteat,* for respondent,

July 23, 1935.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The respondent was insured by the Pioneer Insurance Company under a policy dated February 19, 1930, by the terms of which the company contracted to pay the named beneficiaries the sum of $5,000.00 at the death of the insured, and also contracted to pay $50.00 per month upon proof of the total and permanent disability of the insured. The Pioneer Insurance Company went out of business, and the fulfillment of its contracts of insurance, including this policy, was taken over by the Pyramid Life Insurance Company and the name of the latter was changed to Pioneer Pyramid Life Insurance Company.

Plaintiff, respondent here, brought action against the defendant, appellant here, alleging that he became totally disabled by disease on or about October 25, 1933; that proofs of disability were furnished the company and liability denied; that he paid under protest the premiums due February 15, 1934, in the sum of $115.85, and that due August 15, 1934, in a like sum; by supplemental complaint filed December 11, 1934, plaintiff claimed payment for disability,

proofs of which were filed May 10, 1934, and the disability benefits, therefore, are claimed from said date up to the date of the trial of the case.

For answer by its first defense, the defendant admitted the formal allegations of the complaint, including that which alleged the filing of the claim for disability; further, it denied on information and belief that the insured "is totally and permanently disabled within the terms of the disability clause of the policy"; it then interposed a general denial except as to the things admitted.

For a second defense: That the disability contract of insurance was inserted in the policy on the strength of plaintiff's signed application, and his written reinstatement health certificate of January 15, 1931, upon which defendant relied, upon which plaintiff represented that he had never had any "accident, injury or occupational disease," and that "he was in good health as far as I (he) knew," and that the only causes for which he had consulted a physician in the last five years were turbinectomy in 1929 and influenza in 1925. That the application and reinstatement health certificate were the basis of the contract of insurance between the parties; that the statements in the application and reinstatement certificate were erroneous, incorrect, and known to be so by the plaintiff; that they misled defendant into issuing the insurance policy and the supplemental disability contract therewith; that by reason of such incorrect and erroneous statements, defendant denies liability in this action and is entitled to have the supplemental disability contract canceled; that on learning of the misrepresentations contained in the application and health certificate, it tendered to the plaintiff the sum of $106.67, the sum paid by plaintiff for the supplemental disability contract, together with interest, and tenders the same into Court for plaintiff, and on his refusing to accept it, admits that it is due plaintiff that sum.

The case was tried by Judge Ansel and a jury in the County Court of Greenville County, and a verdict was ren-

dered for plaintiff. In due course of the trial defendant moved for a directed verdict in its favor, and after verdict rendered, moved for a new trial, both of which motions were refused.

The defendant appeals and lays his appeal upon the refusal to direct a verdict for defendant, refusal to grant a new trial, and alleged errors in the charge. These issues will be determined, but not all of the exceptions need be specifically stated.

The motion for directed verdict, except as to $106.67 which it concedes plaintiff is entitled to recover, was based on two grounds, viz.:

1. That the only reasonable conclusion to be drawn from the testimony is that the plaintiff is not totally and permanently disabled under the terms and provisions of the disability clause of the contract of insurance.

2. That plaintiff in his application or in his answer to medical questions made misstatements of material facts as to his health and concealed material information from the insurer, which misled it, and which action entitles it to have the contract of disability canceled.

We may dispose of the second of these propositions in a few words. It was a question for the jury to say whether the insured intentionally, and for the purpose of committing a fraud on the insurer, concealed material facts from the insurer. This is the settled rule of this jurisdiction. It is held in the case of *Johnson v. New York Life Ins. Co.,* 165 S. C., 494, 164 S. E., 175, 177, in these words: "We recognize that, ordinarily, the question of fraud in a case of this kind is for the jury." Although in that case a verdict for defendant was directed on other grounds, Mr. Justice (now Chief Justice) Stabler, said: "Under the circumstances of this case, we do not see how any reasonable inference as to the applicant's intent in making his answer to the questions under consideration could be drawn from the undisputed facts other than that

he deliberately intended to deceive the company and thereby procure the insurance."

Again, from the same opinion: "Where a statement of fact in an application is only a representation, its mere falsity is not sufficient to avoid the policy, its materiality and the good faith of the applicant in making it being important considerations. Under the issues made in the case at bar, it would be necessary for the defendant to show that the statements in the application relied on to defeat the policy was untrue, that their falsity was known to the applicant, that they were material to the risk and relied on by the insurer, and that they were made with intent to deceive and defraud the company."

See, also, *Suggs v. New York Life Ins. Co.*, 174 S. C., 1, 176 S. E., 457. Also *McLester v. Met. Life Ins. Co.*, 175 S. C., 425, 179 S. E., 490, 493. In the last-named opinion the Court, commenting on the case of *Sirgany v. Equitable Life Assur. Co.*, 173 S. C., 120, 175 S. E., 209, said: "In the case of *Sirgany v. Equitable Life Assur. Co.*, 173 S. C., 120, 175 S. E., 209, the physicians did not disclose to the insured the nature of her disease; it was held to be a question for the jury whether by her answers in her application she intended to deceive the insurer and perpetrate a fraud."

It is patent, in the light of these cases, that the trial Judge in the present case committed no error in refusing to direct a verdict for defendant on this ground.

This disposes of the question made by Exceptions II, IV and V. Defendant was not entitled on the showing made to have the Court direct a verdict for plaintiff in the sum of $106.67, and thereupon to order the disability clause of the insurance contract canceled.

Appellant charges error to the presiding Judge for that he denied the motion to direct a verdict for the defendant on ground that the only reasonable conclusion to be deduced from the testimony is that the plaintiff is not permanently and totally disabled under the terms and

conditions of the disability clause contained in the contract of insurance. That clause, which is set out in the record, does not differ materially from those usually contained in such insurance contracts.

What constitutes total and permanent disability within the purview of such contracts has been definitely determined by this Court in a number of cases. There is no doubt thereabout; the difficulty lies in the application of the law. Each case must be governed by the facts as shown by the evidence.

In the recent case of *Owens v. Sovereign Camp, W. O. W.,* 174 S. C., 514, 178 S. E., 125, 126, Mr. Justice Stabler (now Chief Justice) gave this succinct and clear definition of total and permanent disability: "We have held that 'what amounts to a total disability is a relative matter, and depends largely upon the circumstances of each case, and upon the occupation and employment in which the person insured is engaged' (*McCutchen v. Insurance Co.,* 153 S. C., 401, 151 S. E., 67, 80) ; that the phrase is not to be literally construed, but that a person is 'deemed totally disabled when he is no longer able to do his accustomed task, and such work as he has only been trained to do, and upon which he must depend for a living' (*Taylor v. Insurance Co.,* 106 S. C., 356, 91 S. E., 326, 327, L. R. A., 1917-C, 910) ; and that the total disability contemplated by contracts of insurance 'is inability to do substantially all of the material acts necessary to the prosecution of the insured's business or occupation, in substantially his customary and usual manner' (*Berry v. Insurance Co.,* 120 S. C., 328, 113 S. E., 141, 142.)"

To this standard of the law and definition of total and permanent disability we will apply the facts and circumstances of this case.

The appellant is the secretary and assistant treasurer of Pelham Mill. In his original complaint he sought to recover disability from October 25, 1933, but on trial respondent sought to recover disability only from May 10, 1934, the date when the proofs of disability were filed. It appears

from the record that plaintiff was confined to his bed "practically all of the time" from January 2, 1934, to March 12, 1934. It will be seen that no claim for disability is made for that period of time. It is undisputed that save for that period plaintiff *has been, and is now,* regularly engaged in his "customary and usual occupation." True, he testifies that he performs his secretarial duties under the handicap of pain, and with difficulty. It appears that he has arthritis, which is conceded to be a painful disease, but it remains true that plaintiff continues to do his work and to receive compensation therefor. In 1933 he was given clerical assistance, but he frankly admits this was due to the fact that his work under the Code had been greatly increased. Mr. Crigler, the president of the mill, likewise testifies that this was the reason of the increase of the clerical help; it is further in evidence that the mill has added a ginnery to its outfit and the work and scope of plaintiff's duties have been increased thereby. It is also in evidence that about November 1, 1934, the salary of plaintiff was reduced, but he readily admits that this was not due to any falling off or lack of efficiency in the discharge of his duties, but was due to the business conditions of the mill, necessitated curtailment, and a cutting of all salaries. Mr. Crigler testifies to the same effect and states that the reduction of salaries was hoped to be only temporary. There is a great deal of testimony as to the plaintiff's physical condition and the pain he suffers, but the fact remains that for the time for which he claims disability he was continually at his work and is now engaged in its discharge in his customary and usual way. When plaintiff's physician, Dr. Wilkinson, was on the stand as plaintiff's witness, there was read to him a definition of total disability, as given in the *McCutchen case, supra,* and he was asked "Does Mr. Stewart's condition come within the meaning of this condition of total disability?" and he answered "Yes, quite so." Yet, he had just testified, in chief, in answer to the question, "In your opinion do you

think he will ever recover?" "I hope he will be better, but he will always have arthritis."

Evidently the doctor was a better lawyer than his patient. When plaintiff filed his claim for, or proof of, disability he was asked, "After reading the definition of total disability in your policy, do you believe that your disability comes clearly within that definition?" He answered, and he answered under oath, "Let the Judge decide."

Throughout the examination of the plaintiff and of Dr. Wilkinson runs the patent idea that because plaintiff has arthritis, which will some day render him disabled and which now causes him pain and renders his work more arduous, he is *now* totally and permanently disabled, in spite of the fact that he is only claiming disability from May 10, 1934, at which time, and ever since, he has been and is now engaged in the discharge of his usual and customary duties in his usual and customary manner, save for some pain and slowness of movement.

The doctor's dictum is but an opinion, which will not be allowed to override and set at naught the uncontradicted facts of the case.

In the case of *Hickman v. Aetna Life Insurance Co.,* 166 S. C., 316, 164 S. E., 878, 880, the physician had testified that the plaintiff was "what I would call totally disabled." In the opinion of Mr. Justice Stabler, now Chief Justice, he said: "Exactly what he meant by that expression is not clear. The Court will assume, in the face of certain physical facts, that he did not intend to imply that she was reduced to a state of utter helplessness; he clearly had in mind some less strict standard of total disability. If he meant, however, the language used to have the significance given to the expression 'total permanent disability' by this Court in its construction of that term as used in insurance contracts of this kind, *then the admitted fact that plaintiff continued to do her customary work in the usual manner, though perhaps intermittently, for several years thereafter, shows his statement to be absolutely erroneous. In other words, in the face*

*of this fact, the statement of the witness was a mere asser-*
*tion or expression of opinion of no probative value, and*
*could not create an issue of fact as to plaintiff's total dis-*
*ability."* (All italics added.)

In this *Hickman case* the physician was asked:

"Q. In your opinion is she disabled from carrying on her work as a mill worker? A. She is disabled absolutely.

"Q. Do you think she will be disabled for the rest of her life? A. There is no question of it in my mind."

Nevertheless, the Court said in the face of the fact that she did work for years thereafter rendered such testimony of no probative value.

The striking similarity of facts and the expression of medical opinion in that case, and in the one we are considering, defies criticism or attempt to differentiate them.

In the case of *Du Rant v. Ætna Life Ins. Co.,* 166 S. C., 367, 164 S. E., 881, the Court said: "The Court is confronted in this appeal with the decision of the question whether a medical theory of the total and permanent disability of a person is potent to overcome the undisputed evidence of the physical fact that the person was able, after he was alleged to be disabled, to perform the same sort of work he was always accustomed to do."

The Court answered the question by holding that: "Conceding that he had the physical ailments which his medical witness says he had, the only reasonable inference which could be drawn from the evidence is that he was able to do, and did, the very class of work he was accustomed to do up to the very day of his discharge and the day he claims to have become disabled *and for eight weeks thereafter."*

This evidence rendered the doctor's opinion of total disability nugatory as evidence of total disability.

In the case of *Owens v. Sovereign Camp, W. O. W., supra,* the Court said: "The Court has read with especial care the testimony taken in the case at bar, but deems a review of it unnecessary. *While it appears that the insured*

*was an unwell man, perhaps seriously afflicted, it was con-
ceded that, from the date he claimed his disability began
to the time of the trial of the case, he had continued to
work, although not on full time and with a somewhat de-
creased production, in the Easley mill, at his accustomed
task.* \* \* \*" (Italics added.)

The italicized language is in such striking parallel with
the facts of the case at bar, it scarcely needs emphasis to
call it to attention.

The case of *Morgan v. Travelers' Ins. Co.,* 172 S. C.,
404, 174 S. E., 235, was one for the recovery of total dis-
abilities under a group policy. The single syllabus thus states
the issues: "Evidence of insured's total disability at time of
cancellation of certificates under group health and accident
policy where they continued to do their customary work in
mill *held* insufficient for jury."

The Court said in the opinion: "There is a marked sim-
ilarity in the facts of the present case and the facts of the
*Hickman case* and·the principle of law is identical. In both
cases a physican was of the expressed opinion that a dis-
ability existed; in both cases the plaintiff continued to do
customary work after the total disability was supposed to
exist; in both cases the policy lapsed for non-payment of
premiums. A recovery was denied in the *Hickman case,*
the Court saying: 'While it appeared that plaintiff was
seriously afflicted, there was no evidence upon which the
jury could have predicated a finding that she was "totally
disabled," under the Court's construction of that term as
used in a policy of this kind, before or at the time of the
cancellation of her insurance.' "

In the present case the ·plaintiff's own statement of his
claim of total disability consists of assertions in general
terms of his pains and sufferings; but he continues at his
work. The only evidence upon which plaintiff could rely
to take the case to the jury was the assertion of the doctor
of his opinion that plaintiff is totally and permanently dis-

abled. We have seen by the decisions of our own Supreme Court that such medical opinion evidence, in the light of the undisputed facts, has no probative value. There is authority from other jurisdictions and from the United States Supreme Court sustaining the position taken by our Supreme Court.

The case of *United States v. Spaulding*, 293 U. S., 498, 55 S. Ct., 273, 276, 79 L. Ed., ——, decided January 5, 1935, was an action to recover on the disability clause contained in a war risk insurance policy. Physicians testified that the claimant was totally and permanently disabled. There was evidence that the claimant had pursued gainful occupations during the period of alleged total disability. Mr. Justice Butler, for the United States Supreme Court, said: "The medical opinions that respondent became totally and permanently disabled before his policy lapsed are without weight."

Recovery was denied. See, also, *Harris v. United States* (C. C. A.), 70 F. (2d), 889.

The respondent seeks to find support for his position in the case of *Mann v. Travelers' Ins. Co.*, 176 S. C., 198, 179 S. E., 796, 798, decided by this Court, April 2, 1935, and reported in Westbrook's Ops. Sup. Ct. of date, April 6, 1935. It appears that the insurance company recognized the fact of Mann's disability, and began paying him therefor. Voluntarily Mann returned to his work and allowed the insurance company to suspend its weekly payments to him on his disability clause. He attempted to do his work, and with the aid of others, continued in the employ, but finally his services were discontinued. His condition had not improved. He asked for the resumption of his weekly payments, but did not ask for payments during the time he was employed. The request was refused and action was then brought. In the opinion this Court said in reference to plaintiff's attempt to continue his work: "There was evidence that plaintiff was never able to do his work after the accident, but only parts of it, and that the permanency of

his disability became so apparent that he was finally discharged."

Respondent also relies upon the case of *Smoak v. Southeastern Life Ins. Co.,* 175 S. C., 324, 179 S. E., 56, filed March 27, 1935, and reported in Westbrook's Ops. Sup. Ct. March 30, 1935. In that case it appears that the plaintiff's hands were so injured that he could not grip any object securely; that this interfered with his power to drive his car, as his duties took him from his home to the several churches he served as pastor; that it seriously interfered with his power to write; it interfered with his power to administer the sacraments and perform the rites of baptism. It is significant that the plaintiff in the present action points to no one particular in which he is hindered in performing, or prevented from performing, his accustomed duties.

The conclusion of this Court is that the trial Court committed no error in refusing to direct a verdict for defendant on the ground of misrepresentations in the application and the reinstatement certificate, and that defendant is not entitled to have the disability clause of the policy canceled for such cause. If and when the plaintiff shall become totally and permanently disabled, the clause will be for his protection, if he has maintained the policy in force.

There was reversible error, however, in refusing the motion to direct a verdict for defendant on the ground that the evidence shows that plaintiff is not totally and permanently disabled within the terms and provisions of the disability clause of the contract of insurance.

The judgment of the lower Court is reversed, and the case remanded, with instruction to enter judgment for the defendant under Rule 27.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE concur.

MR. JUSTICE CARTER concurs in result.