14098

BROWN v. EQUITABLE LIFE ASSUR. SOCIETY OF THE UNITED STATES

(180 S. E., 894)

*Messrs. Osborne & Butler,* for appellant-respondent,

*Messrs. Johnson & Johnson,* for respondent-appellant,

June 27, 1935.

The opinion of the Court was delivered by Mr. Justice Baker.

There are cross-appeals in this case, and it will be necessary to refer to the parties as plaintiff and defendant.

There are three appeals involved in this cause, that is:

"(1) The appeal by the defendant from the judgment entered in the original cause.

"(2) Appeal by the plaintiff from the order settling the case on appeal.

"(3) Appeal by defendant from the order refusing motion for new trial on grounds of after-discovered evidence."

Plaintiff has raised the question that defendant is estopped from having its exceptions contained in the transcript of record considered, when the same questions were presented to and argued before the trial Judge on motion to set aside the verdict and for a new trial; there

being no appeal from nor exceptions to the refusal of the trial Judge to set aside the verdict and grant a new trial.

There is nothing in the transcript of record as allowed by the trial Judge from which this Court could conclude that the identical question raised upon the trial of the case were made the basis of the motion for a new trial and to set aside the verdict, but even if this unquestionably appeared, this Court considers it the better practice on appeal, in the interest of brevity, to let one exception cover the alleged legal error, and if the alleged legal error occurred during the progress of the trial, the exception should be based thereon. It would merely encumber the record to again except to the order of the trial Judge refusing a new trial, when he fails to reverse his ruling on the trial of the case. See case of *Newsom v. F. W. Poe Mfg. Co.,* 102 S. C., 77, 86 S. E., 195, 197, in which the Court had this to say:

"The first and second exceptions raise the same questions, and are in almost the same words.

"The first complains of error in refusing to direct a verdict for the defendant, and the second complains of error in refusing a new trial on the same grounds. This Court would suggest to counsel that this practice, which is very common, is an unnecessary incumbrance of the record. When a motion to direct a verdict is made, the party has preserved his rights to have the questions made on that motion decided here. A refusal of the motion for a new trial based upon the same grounds adds nothing to appellant's rights, unless there is something new to bring to the attention of the trial Court."

The plaintiff claims under a group policy of insurance issued by defendant to Spartan Mills, plaintiff, an employee of said Spartan Mills, holding a certificate entitling him to benefits of said group policy for which he paid 60 cents per month. This policy of insurance carried a "Total and Permanent Disability" clause, in which defendant agreed to pay plaintiff a certain monthly sum for a certain number of months if plaintiff, before attaining 60 years of age

(plaintiff was within the age limit) and while insured under the policy, became totally and permanently disabled by bodily injury or disease and thereby became presumably continuously prevented for life from engaging in any occupation or performing any work for compensation of financial value, etc.

The fourth allegation of plaintiff's complaint is as follows: "That thereafter, on or about the twentieth day of March, 1933, or shortly afterwards, while the said contract of insurance was in full force and effect, and before plaintiff attained the age of sixty years, plaintiff became totally and permanently disabled as a result of hypertension, myocarditis, arteriosclerosis and other bodily diseases and infirmities and has been since that time, and will presumably be for the remainder of his life, prevented thereby from engaging in any occupation or performing any work for compensation of financial value."

The definition of "total disability" as pronounced time and time again by this Court in insurance cases is hereby again adopted, as was done by the eminent lawyer and jurist writing the opinion of the Court in the case of *Morgan v. Ins. Co.,* 172 S. C., 404, 174 S. E., 235. It would be a useless expense of printing to again quote from the various cases already reported the definition given these words.

In order for plaintiff to recover under the contract of insurance, he must show not only that he suffered a "total disability," but that such "total disability" of a permanent nature occurred while the policy was in force. It is an admitted fact that the policy was not in force after May 5, 1933.

Now, what are the facts? Plaintiff had been a scrubber and general hand around cotton mills for a number of years. He was uneducated and untrained, and necessarily had to depend upon manual labor for a livelihood for himself and family. He had been working for Spartan Mills as scrubber

and from time to time putting in new frames since some time in 1930. In March, 1933, while engaged in putting up frames he got hurt, a back injury, which no one claims within itself was more than temporary, although he was off from work and under the care of Drs. Jefferies and Alford, regular physicians employed by said Spartan Mills, for about 60 days. There is a contradiction in the testimony as to just when plaintiff returned to his work after the injury in March, but since the question now under consideration is whether the trial Judge should have directed a verdict for defendant, the date as given by the plaintiff, and the one most favorable to him, will be used. This was May 8, 1933. When plaintiff returned to his work at the mills, he was put back on his same old job as scrubber, and to do the same amount of work he had theretofore been accustomed to doing and at the same pay. He lost five days' time in May (whether before or after May 8, the record does not disclose) ; he worked all the month of June without losing any time; worked all of the month of July, except July 4th, when the mills were closed; worked every day in August; was out four hours in September, otherwise made full time; worked all of October and until November 15th, when he was either discharged or quit. There is some testimony to the effect that after plaintiff returned to work on May 8th, his services were not what they should have been; he claiming they were not, on account of the fact that he was physically unable to do the work; that his back hurt him. The following testimony appears on his direct examination:

"Q. Now, after you went back to work, tell the Court and jury just about how you did your work. Were you able to work? Were you able to go about it like you would have liked to do it? Tell them what happened. Were you able or not able? A. When I went back to work, I was not able to do my work as I had before because my back hurt me. It exerted me a whole lot to scrub and because that pulled sorter from my hip up, and I went on trying to do the best I could (folio 57)."

"Q. Jim, when you undertook to go to work, did you have giddy spells and headaches? A. Yes, sir; I had headaches after I went back to work. My head began hurting very bad and my heart jumped and I had to stop then, everything turned red before my eyes, and I leaned over on the broom. I stopped for a few minutes and it went on, and the second-hand come in and says: 'Jim, you got to get down' (folio 59)." (Interrupted by objection.)

Again at folios 73 and 74, we quote:

"Q. When you went back to work over there in May sometime up through June, July, etc., what happened to you when you tried to exert yourself over there? A. I had taken with a headache, heart beating bad, have to lean upon something or either fall, and everything would turn red before me.

"Q. I believe you testified that made you tire very quickly and you would have to go out of the mill. Now in addition to that, did you say that you were able to exert yourself hard enough to get up all that grease? A. I was not able. I couldn't hold out.

"Q. Could you clean the floors like they should have been cleaned? A. No, sir.

"Q. Did you clean them like they should have been cleaned? A. No, sir."

From the time (May 8, 1933) plaintiff returned to work until November 15, 1933, he did the same work he had been doing prior to his injury in March, 1933. When he stopped work on November 15, 1933, he was sent or went to Drs. Jefferies and Alford, who at that time found him in a rather serious condition; but this testimony is of rather doubtful value as showing the total disability of plaintiff on or prior to May 5, 1933. It is true that both Dr. Jefferies and Dr. Alford testified that they had recognized some heart trouble to exist at the time they were treating plaintiff for his injury, but it is extremely difficult to determine from reading the testimony whether these physicians found plaintiff was suffering from "hardening of the vessels, high pressure, and

emaciation of the heart, myocarditis" during the time he was being treated for the injury or if this was the diagnosis in November, or if their opinion as expressed at the trial, of the heart condition of plaintiff in March, was based on what they found in November. There is no suggestion in the testimony of these physicians that either had considered the physicial condition of plaintiff serious at the time they were treating him for the injury, or that they had treated him therefor, if indeed there is any treatment other than rest for this trouble.

It would appear, however, that regardless of the opinion of the physicians testifying for plaintiff as to his condition in either the "injury" period or in November, the fact remains that from May 8, 1933, three days after the contract of insurance had been canceled, until November 15, 1933, plaintiff worked regularly and continuously at the same job he had had since 1930, although there is testimony that he had not rendered good services during this period. However, there was also testimony that he had never rendered particularly good services, and that there was no difference in his work as a scrubber before and after his injury.

Since plaintiff worked at Spartan Mills, he admits having worked at a filling station where he put gasoline in cars, changed the oil, and from time to time changed tires on cars, for which he received $4.00 per week.

It might be well at this time to again reiterate that there is no claim that the injury within itself resulted in total and permanent disability, but was merely the occasion which brought on the alleged aggravated condition, which it is alleged already existed, from which it is claimed the plaintiff never sufficiently recovered to perform the work upon which he had been accustomed to depend for a livelihood.

At the conclusion of plaintiff's testimony, defendant moved for a nonsuit on the ground that it appeared affirmative from the testimony that plaintiff had for a period of several months after he claimed total disability continued to do the same work he had been accustomed to

doing, and, in addition, had engaged in another form of work involving manual labor. This motion was refused, and at the close of the taking of testimony defendant moved for a direction of verdict in its behalf on substantially the same ground as for a nonsuit, which motion was also refused. From these rulings, defendant bases its third, fourth, and seventh exceptions.

Under the authority of and reasoning in the cases of *Hickman v. Aetna Life Ins. Co.*, 166 S. C., 316, 164 S. E., 878; *DuRant v. Aetna Life Ins. Co.*, 166 S. C., 367, 164 S. E., 881; *Morgan v. Travelers' Ins. Co.*, 172 S. C., 404, 174 S. E., 235, and *Owens v. Sovereign Camp, W. O. W.*, 174 S. C., 514, 178 S. E., 125, when it appeared that plaintiff had continued to perform substantially his usual tasks for a period of over six months after he alleged total and permanent disability, notwithstanding the opinion of physicians that he was in a serious condition, the trial Judge should have directed a verdict for defendant, because the only reasonable inference which could be drawn from the evidence is that he was able to do, and did, the very class of work he was accustomed to do, as aforesaid, for a period of more than six months, in substantially the same manner after the policy of insurance under which he was claiming had been canceled.

Having reached this conclusion, it is unnecessary to consider or pass upon the other exceptions of defendant in either the main appeal or from the refusal of the County Judge to grant a new trial on alleged after-discovered evidence.

It is probably immaterial to the litigants if this Court passes on the refusal of the County Judge to require defendant to print as a part of the record the order of the trial Judge refusing a new trial. There having been no appeal therefrom, he committed no error in disallowing this proposed amendment to the transcript of record.

It is the judgment of this Court that the judgment of the lower Court be, and is, reversed, and the case is remanded

to that Court, with direction to enter judgment for defendant under Rule 27 of this Court.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM, and FISHBURNE, concur.