14370

BRUNSON v. PRUDENTIAL INS. CO. OF AMERICA

(188 S. E., 255)

*Messrs. Edward L. Craig, J. Nelson Frierson* and *A. J. Hydrick,* for appellant,

*Messrs. Lide & Felder,* for respondent,

November 7, 1936.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

On March 25, 1924, the defendant company insured the life of the plaintiff, William W. Brunson, for $1,000.00. The policy contained a provision that should the insured become wholly and permanently disabled before attaining the age of sixty years, the insurer would pay him monthly, during such disability, the sum of $10.00 for each $1,000.00 of the face amount of the insurance provided for, and would waive the payment of premiums for such time.

This action was begun in January, 1935. It was alleged that on or about August 15, 1934, the insured became totally and permanently disabled within the meaning of the insurance contract; and that he thereafter notified the company of such fact, but that it refused to do anything about it. Upon the call of the case for trial, the plaintiff was

permitted to amend his complaint by alleging that he had paid, on April 22, 1935, a semi-annual premium of $15.91, and also that certain additional monthly disability benefits were now due, thereby increasing the demand for judgment to $75.91. The jury returned a verdict for the full amount demanded in the amended complaint.

The appeal presents but one question: Did the trial Judge commit error in refusing defendant's motion for a directed verdict, made upon the ground that there was no evidence that the insured was totally disabled?

In *Owens v. Sovereign Camp, W. O. W.,* 174 S. C., 514, 178 S. E., 125, 126, the Court said: "We have held that 'what amounts to a total disability is a relative matter, and depends largely upon the circumstances of each case, and upon the occupation and employment in which the person insured is engaged' (*McCutchen v. Insurance Co.,* 153 S. C., 401, 151 S. E., 67, 80); that the phrase is not to be literally construed, but that a person is 'deemed totally disabled when he is no longer able to do his accustomed task, and such work as he has only been trained to do, and upon which he must depend for a living' (*Taylor v. Insurance Co.,* 106 S. C., 356, 91 S. E., 326, 327, L. R. A., 1917-C, 910); and that the total disability contemplated by contracts of insurance 'is inability to do substantially all of the material acts necessary to the prosecution of the insured's business or occupation, in substantially his customary and usual manner' (*Berry v. Insurance Co.,* 120 S. C., 328, 113 S. E., 141, 142)."

The testimony on the issue involved is somewhat voluminous, but we have examined it all with care. It appears that respondent has owned a dry-cleaning plant in the City of Orangeburg since 1922; that he managed and operated it himself for a number of years, and that he depended upon such business, and still depends upon it, for a living. It was testified that his deafness, which he says finally rendered him unfit and unable to perform the material acts necessary to the prosecution of his work, developed gradually

until he became practically deaf about two years ago. He stated that about 1933 he became so deaf that he could no longer do the things that he had been doing, and which were essential in the transaction of his business: He could not contact with the public, could not collect, could not go on routes, could not discuss with customers the nature of the work to be done, and could not use the telephone, over which one-half of the orders came; that, finally, about all he could do was to stay in the back of the place and look after the machinery; that because of his deafness his business "fell off" about one-half; and that he had to call in his wife from the home and the children to help him, and without whose help the business could not be run at all. Mrs. Brunson, the wife, corroborated what her husband testified to. She stated that when she married him in 1924, no deafness was noticeable, but that he finally became so hard of hearing that he could not manage and operate his dry-cleaning business—could not do the work he had been accustomed to do; that "he lost his hearing and lost his business along with it", as "he could not hear the customers and would not clean or press the clothes like they wanted him to"; and that in his present physical condition he cannot run the business, and the witness had to leave her household duties and children to save it.

J. A. Berry, a practicing attorney, testified that he owns the store where the plaintiff has had his dry-cleaning business for fifteen years or more; that respondent's hearing appeared to be all right when he first occupied the building, but that after a while it became difficult to talk to him, and finally for the last year or two it has been so bad that the witness has not had a half dozen conversations with him; that prior to his deafness, Brunson operated the establishment and operated it all right, but that it is now hard to transact any business with him, although the witness still regarded him as his tenant. W. P. Brunson, a brother stated that the plaintiff formerly ran his dry-cleaning business himself, but that he cannot do so now on account of his

deafness. W. C. Crum testified that his automobile business is located near Brunson's dry-cleaning plant; that the witness has often observed the plaintiff, and in his present condition he cannot contact the public.

Dr. C. I. Green, a practicing physician, stated that he had examined the plaintiff for deafness; that he had also done business with him at his pressing club, but that it was very difficult on account of his deafness; that it was hard to get him to understand, and that sometimes he would dry-clean a suit when it was desired to have it pressed only, and for these reasons the witness had quit doing business with him. Dr. G. M. Truluck, eye, ear, nose, and throat specialist, testified that he knew the plaintiff and had treated him "for his hearing"; that it could not positively be said just when he became acutely deaf but that the witness had noticed him getting worse and worse; that he had been in plaintiff's place of business, and had observed for the past two and a half years that he did not seem to be attending to it as he formerly did; that you could not transact business with him very well, as he could not understand you; that his condition is permanent, and in the professional opinion of the witness there is no chance to cure him; and that "in his business there at the pressing club it is not possible for him to contact the public. It is not possible for him to satisfactorily work his labor there. It is not possible for him to run his business as a pressing club satisfactorily."

The record contains other evidence bearing upon the issue, but we deem a further review of it unnecessary. It is clear that the above-quoted testimony tended to prove the plaintiff's allegation that the insured was totally disabled, as that phrase has been defined by this Court in connection with its use in insurance contracts. In other words, under the evidence, it was a question of fact for the jury as to whether the insured was no longer able, because of his deafness, to substantially do and perform all material acts or things necessary to the prosecution of his work or occupation which he had been trained to do, and upon which

he depended for a living, in substantially his customary and usual manner. See authorities cited above. The trial Judge properly refused to direct a verdict.

The judgment of the Court below is affirmed.

MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE, and MR. ACTING ASSOCIATE JUSTICE A. L. GASTON concur.