14531

HARMAN v. NEW YORK LIFE INS. CO.

(192 S. E., 878)

October, 1936.

*Messrs. Thomas, Lumpkin & Cain* and *Grier, Park, Mc-Donald & Todd,* for appellant, cite:

*Messrs. Hugh Beasley* and *Mays & Featherstone,* for respondent, cite:

September 10, 1937.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

In June, 1930, the defendant company insured the life of plaintiff for $1,000.00. The policy contained a provision for payment, under certain named conditions, of total and permanent disability benefits, and also provided that the company would waive the payment of premiums during the period of disability.

This action was commenced in November, 1935. The plaintiff alleged that on September 6, 1930, while working on an electric light pole, which his duties as assistant electric line superintendent required him to do, his right leg accidentally came in contact with a wire heavily charged with electricity, and that the nerves and muscles of the leg were so burned and injured that he was thereby, under the meaning of the contract of insurance and the law applicable thereto, rendered totally and permanently disabled; and that the company paid him the benefits up to and including July 6, 1935, but refused to make any payments thereafter. Judgment was demanded for the amount claimed to be due and owing.

The defendant, answering, admitted the execution and delivery of the policy, but alleged that the insured was not so disabled during the times mentioned in the complaint as to be wholly prevented from performing any work or from engaging in any business for remuneration or profit, and denied that it was indebted to the plaintiff in any sum whatsoever.

The case was tried in the fall of 1936. At the proper time, the defendant asked for the direction of a verdict in its favor on the ground that there was no proof that the insured was totally and permanently disabled as that term is defined in the policy or interpreted by this Court in connection with the use of such phrase in insurance contracts. The trial Judge, holding adversely to this contention, refused the motion; and further held, in directing a verdict for the plaintiff, that only one reasonable inference could be deduced from the testimony, namely, that the insured, under our decisions, was totally and permanently disabled. The appellant contends that Judge Johnson was wrong in both conclusions; and these are the only questions involved in the appeal.

In *Owens v. Sovereign Camp, W. O. W.*, 174 S. C., 514, 178 S. E., 125, 126, this Court said: "We have held that 'what amounts to a total disability is a relative matter, and depends largely upon the circumstances of each case, and upon the occupation and employment in which the person insured is engaged' (*McCutchen v. Insurance Co.*, 153 S. C., 401, 151 S. E., 67, 80); that the phrase is not to be literally construed, but that a person is 'deemed totally disabled when he is no longer able to do his accustomed task, and such work as he has only been trained to do, and upon which he must depend for a living' (*Taylor v. Insurance Co.*, 106 S. C., 356, 91 S. E., 326, 327, L. R. A., 1917-C, 910); and that the total disability contemplated by contracts of insurance 'is inability to do substantially all of the material acts necessary to the prosecution of the insured's business or occupation, in substantially his customary and usual manner' (*Berry v. Insurance Co.*, 120 S. C., 328, 113 S. E., 141, 142)."

We have read with painstaking care the testimony—the defendant offered none—contained in the record for appeal, and will briefly review it. The plaintiff testified that he began doing electrical work in 1917, at which time he was

employed by the Gas & Electric Company of Columbia; that he thereafter worked for a while in the telephone business as a lineman, climbing poles and handling wires; that in 1928 he was employed by the Greenwood Water & Light Plant as an electric light lineman, connected only with the electric department, and that his duties were "to climb poles, set poles, read meters, and to carry on the job when the man in charge was away"; that on September 6, 1930, in pursuance of his duties, he was on a pole strung with electric wires and accidentally came in contact with one of them, which inflicted a severe burn below the knee on his right leg, so that "I can't do that work any more, I can't climb any more"; that after four months and two days from the date of the accident he went back to work for the city, but that he was not able to perform the duties of an electric lineman, but worked around the storeroom and the office and read meters for a while, but got to the point where he could not hold out to do that, as his leg went down on him; that the city then took him off the work of reading meters and put him in the water department as a kind of supervisor, "fixing water meters and laying pipe. I had a couple of negroes, I go along with them to show them what to do and have them to do it." The witness also stated that two years after the accident, on the advice of his physician, Dr. Turner, his leg was operated on for the purpose of trying to unite the nerve which had been burned and severed, but it could not be done. He further testified that the defendant company had paid him certain disability benefits under the policy, but had refused to make any further payments after August 6, 1935, although the condition of the witness was "getting worse year after year." On cross examination he said that the city had continued to pay him the same salary he received before he was injured.

Dr. W. P. Turner stated that he had treated Harman for the injury to his right leg, and that when he first saw him he had an electric burn on that leg extending below the

knee, and that the nerve was severed; that in 1932 he treated it again: "I operated on it to bring the ends of the nerve together and sew it together. There was so much destruction of the nerve I couldn't get it together"; that the nerve being destroyed, "caused a loss of sensation inside of foot and leg, and what we call foot-drop, inability to bring his toe up this way"; and that in the opinion of the witness there was no hope for plaintiff's recovering the use of his foot. Dr. J. D. Harrison testified to the same effect.

F. W. Chapman, superintendent of the water and light plant, stated that the work of an electric light lineman was on the outside of the plant, and included erecting poles, putting the electric wires on them, etc.; that he came to Greenwood after Harman had been hurt, and found him working around the office and reading some meters, both electric and water, but that he was unable to keep up the meter reading work, a job requiring continual walking, and he had to take him off that job because of his injured leg; that he then gave him the work of looking after the water service, changing water meters, etc., and that is what he is doing now; that, due to Mr. Harman's injury, he favored him in the work, and that he would be a more valuable man even in his present job, if he had good use of his leg. He further stated that Harman, as foreman of the water service, puts in his full time and gets the same pay that he otherwise would. He also said that an electric lineman has the future of becoming a foreman of line construction, which would naturally carry with it more pay, and that he might become an executive if he has enough education, training, and aptitude; but that the experience of a man in the trade of electric light lineman would be of no particular value to him in the doing of the work which Harman was then doing. Olin S. Shirley, "foreman of the electric lines for the Greenwood Water & Light Plant," testified that the work of an electric light lineman is considered a special trade, and that a man who qualifies himself for such work

has got to serve his apprenticeship under a competent lineman, which varies according to learning and intelligence. He further stated that he considered the plaintiff a "journeyman lineman, and efficient electric light lineman"; and that, at the time of his injury, he "was in position to be foreman here." J. E. Torrence, who worked for the water and light plant, said that Harman was not able "to do any big cuts, when you handle six-inch mains and heavy work"; and that frequently "it is necessary for an employee of the waterworks department to assist him if he is unable to do certain work on account of physical condition."

Under the foregoing testimony, and other evidence contained in the record, we are of opinion that Judge Johnson committed no error as complained of. While it is true that the plaintiff is working for the same employer and is receiving the same remuneration as before he was injured, it is undisputed that he was and is given lighter work of a different character and is a favored employee. As pointed out by the trial Judge, "an electric light lineman sets poles, strings light wires on them, puts glass insulators on them, attaches transformers to the poles, and that is wholly different from the work in the waterworks department." Furthermore, the work of an electric lineman, as the testimony shows, is a special trade, requiring service as an apprentice to become a finished mechanic, one able to do efficiently in all respects the work required to be done. While the plaintiff was such a mechanic, because of the injury received by him he can no longer, as shown by the evidence, do all the material acts and things necessary to the prosecution and performance of the duties of an electric lineman, the work that he had been trained to do and upon which he depended for a living, in substantially his customary and usual manner. We find also that the testimony offered to prove the fact of plaintiff's total and permanent disability was uncontradicted, and that all of it tended to establish the truth of such allegation. This

made the question one of law for the Court and not one of fact for the jury. The trial Judge, therefore, properly directed a verdict for the plaintiff, as was done. *Slaughter Co. v. King Lumber Co.,* 79 S. C., 338, 60 S. E., 705.

The judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.