14701

BLAKELEY v. PRUDENTIAL INS. CO. OF AMERICA

(197 S. E., 670)

*Messrs. Osborne, Butler & Moore* and *Huff & Huff,* for appellant,

*Messrs. Blackwell, Sullivan & Wilson,* for respondent,

June 3, 1938.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

On June 27, 1921, the defendant company insured the life of the plaintiff, George H. Blakeley, in the sum of $5,-000.00. The contract provided that should Blakeley become totally and permanently disabled before he was sixty years of age, the insurer would pay him monthly, as disability benefits, the sum of $10.00 for each $1,000.00 of the amount of insurance under the policy, and would waive the payment of premiums that became payable during the disability.

On March 27, 1937, this action was begun by the plaintiff—his demand for payment having been denied by the company—to recover such benefits, at the rate of $50.00 per month, from August 1, 1936, to the date of the com-

mencement of the suit. Leave was later granted him, however, to amend his complaint so as to seek recovery up to and including October 1, 1937. It was alleged, among other things, "that the plaintiff became totally and permanently disabled on May 2, 1932, and has remained totally and permanently disabled since said date. That the total and permanent disability of the insured. * * * was caused by arthritis of the neck and shoulders and hands, with a resultant loss of motion and use of hands, neck and shoulders." The answer admitted the issuance of the policy, but denied total and permanent disability of the insured as alleged in the complaint. The trial of the case resulted in a verdict for the plaintiff, and judgment was entered up in his favor for $779.50. The defendant company appeals and imputes error to the Circuit Judge (1) in refusing to direct a verdict in its favor, and (2) in rejecting its request to charge.

The motion for a directed verdict was made "on the ground that the only reasonable inference to be drawn from the evidence is that the plaintiff was not during the time covered by the present action totally and permanently disabled within the meaning of that term as outlined by the policy and as defined by our Supreme Court."

In *McCutchen v. Pacific Mut. Life Insurance Co.,* 153 S. C., 401, 151 S. E., 67, 80, this Court held that "what amounts to a total disability is a relative matter, and depends largely upon the circumstances of each case, and upon the occupation and employment in which the person insured is engaged;" and in *Taylor v. Southern States Life Insurance Co.,* 106 S. C., 356, 91 S. E., 326, 327, L. R. A., 1917-C, 910, that the phrase is not to be literally construed, but that a person is "deemed totally disabled when he is no longer able to do his accustomed task, and such work as he has only been  trained to do, and upon which he must depend for a living;" and in *Berry v. United Life & Accident Insurance Co.,* 120 S. C., 328, 113 S. E., 141, 142, that the total disability contemplated by contracts of insurance "is inability

to do substantially all of the material acts necessary to the prosecution of the insured's business or occupation, in substantially his customary and usual manner."

As disclosed by the testimony, which we will briefly review, at the time the policy was taken out by the insured, he was an employee of the Laurens National Bank as its cashier, and had been working there in that capacity for several years, and continued to do so until 1927, at which time the bank was placed in the hands of a Receiver. He stated that his work as cashier required him to be on his feet "practically all of the time;" that his hours were from "nine to three", and that his duties, in the main, were to contact the public at the window, to receive money, to meet customers, to look after the mail, to operate occasionally one of the machines in the bank, though that was not his regular work, etc.; that after the bank closed, and for several years prior to 1932, he was in the automobile business; that he sold cars and did repair work himself, looked after the unloading and did other work that was required to be done "around a garage and automobile sales place."

With regard to his physical condition, Blakeley testified that in 1932 he had an attack of arthritis, which began in his neck and gradually worked down his spine, causing him to suffer pain; that since that time he had been examined and treated by several doctors, and went to the hospital at Charlotte where he stayed for six weeks; that at the present time "my whole body is straight; from my neck to my waist is stiff; it is absolutely stationary. I haven't any use of my neck as far as turning my head, or moving my head. It is moved from my waist up;" and that he cannot lift his eyes above a parallel line. He further stated that since 1935, or August 1, 1936, he had been doing some bookkeeping in the Laurens Music Store, owned by his brother-in-law. T. C. Owings; that "the book work that I do there is done on a seat, on a stool. I sit down all of the time;" that the witness does some work in that way for about four hours a day, but goes to the store when he feels like it and leaves when he gets ready;

that he does not work every day but that "most of the time I go down because it is work and it makes me feel better to have something to keep my mind off of myself than it would be to stay at home;" that he owns a 260-acre farm but leaves the operation and management of it "pretty much with my tenants;" that he could not in his physical condition go back in a bank and do the work of a cashier in the same manner as he did before he became disabled; that his duties in the store are altogether different from those which he performed in the bank—"in the bank I was on my feet; in this work I am sitting down—I can't be on my feet." The testimony of the witness T. C. Owings was corroborative of the statements made by the insured as to the work he did, and the manner of his doing it, at the Laurens Music Store. This witness also stated that no agreement was made as to what salary should be paid his brother-in-law for what he did, but that he knew "he didn't have anything to live on," and that, therefore, he would give him more than he was getting, if he needed it.

Dr. J. W. White, a specialist in bone and joint surgery, testified that he examined the insured on December 29, 1936, at the request of the Prudential Insurance Company, and reported to the company that "I felt that Mr. Blakeley was completely disabled at that time by reason of the arthritis of the spine;" that "he was walking rather apprehensively, guarding himself. He held himself in an awkward position. He was unable to bend his spine in any direction. There was a marked degree of muscular spasm. The muscles in his back were holding him rigid to protect his spine, as an irritated spine is protected naturally;" and that the witness based his opinion, that the insured was totally and permanently disabled, upon two things, "one being the X-ray and the other being the muscular spasm extending from the neck down." Dr. White further stated that he examined the insured again on September 30, 1937, and found his condition to be practically the same as before; and that "he will

be completely disabled the rest of his life," and will have considerable pain until his spine becomes firmly ankylosed, which means that there is no motion in the spine at all.

Dr. R. H. Ariail, who had examined the insured twice, also testified that he "found definite ankylosis of the spine," and that in his opinion the plaintiff would be in that condition for the rest of his life; that he is not able to do hard work of any kind, or to stand on his feet for six or seven hours a day, but that "he can sit down and do easy things that do not take any exercise or manual labor to do." Dr. R. P. McGowan, from his examination of Blakeley, testified practically to the same effect.

Unquestionably, the above-quoted testimony tended to prove the plaintiff's allegation that the insured was totally and permanently disabled, as that phrase has been defined by this Court in connection with its use in insurance contracts. It is true that the bank in which the plaintiff was employed as cashier at the time the insurance was taken out, and which he served in such capacity for quite a number of years, closed its doors in 1927. However, when on the stand, he testified fully and in detail as to the nature of his duties as such cashier, and which indicated the strength and freedom of movement necessary for their proper performance. He also testified fully as to what kind of work he was only able to do, and the manner in which he could only do it, at the Laurens Music Store, the place where he worked after he was afflicted with arthritis. From all of the testimony, when considered together, the jury could reasonably infer that the insured was no longer able to do the work of a cashier of a bank, even if at all, in substantially his customary and usual manner. In short, the evidence tended to establish, as we have said, the truth of plaintiff's allegation of total and permanent disability. The Court, therefore, properly overruled the defendant's motion for a directed verdict on the ground stated.

In addition to the authorities cited, see *Davis v. Metropolitan Life Insurance Co.,* 164 S. C., 444, 162 S. E., 429;

*Dukes v. Jefferson Standard Life Insurance Co.,* 172 S. C., 502, 174 S. E., 463; *Smoak v. Southeastern Life Insurance Co.,* 175 S. C., 324, 179 S. E., 56; *Brunson v. Prudential Insurance Co.,* 182 S. C., 24, 188 S. E., 255; *Harman v. New York Life Insurance Co.,* 184 S. C., 461, 192 S. E., 878.

At the close of his charge, the trial Judge inquired of the attorneys in the case if anything further were desired, to which Mr. Butler, of counsel for the defendant, responded: "There might be some confusion about what constitutes his occupation. I think it would be proper to charge the jury that the standard by which his disability must be gauged is the standard of the duties and work of a cashier of a bank which was the basis on which he was insured."

The request was refused for the following reasons, as stated by the Court: "They have heard the evidence here. I would be charging on the facts if I went into that. They have heard what his occupation was and what his duties were. It is for them to determine, can he carry out those duties as he has testified to as having been performed by him before in substantially the customary and usual way. That is, carry out his duties so as to substantially perform all of the material and necessary acts for the prosecution of his business."

The appellant contends that Judge Bellinger committed error in refusing to charge as requested. We are not in accord with this view. Under the testimony, the work, if any, which the insured had been trained to do, and upon which he depended for a living, was a question of fact for the jury, which they were required to consider and answer in connection with their determination of the insured's alleged total disability, and of his inability, by reason thereof, to perform the duties of such business or occupation, in substantially his customary and usual manner. The trial Judge fully and correctly instructed the jury with respect to these matters. He told them what total disability meant when used in insurance contracts, as that phrase has been de-

fined by this Court, and what the insured was required to prove, and by the preponderance of the evidence, before he would be entitled to recover, particularly emphasizing that they, the jury, were the sole judges of the facts. As to the evidence, which we have discussed somewhat fully in our decision of the first question, the defendant offered none except the books of the Laurens Music Store. The testimony for the plaintiff, therefore, on all material points, was practically undisputed. That the insured was working in the bank as its cashier at the time the insurance was taken out, that he had been there for several years before and had remained there some years thereafter, and what his duties were as such cashier and the manner of their performance, were gone into at length and particularly emphasized in the examination of the witnesses, the insured stating that he "had been in the bank practically ten or fifteen years." It is true that the plaintiff, upon being questioned thereabout, testified that he was in the automobile business for a few years after the bank closed; but an examination of the record does not disclose that any special emphasis was given to that fact. The reasonable inference to be drawn from all the testimony is that the insured's work as an employee of the bank was that which he was trained to do, and upon which he depended for a living. The submission of the question to the jury, therefore, gave to the defendant all that it was entitled to. Furthermore, it is not denied that the plaintiff paid the premiums required on his policy while a bank cashier, and that the company continued to accept such premiums after the bank closed and the insured was engaged in the automobile business. It may be true that "an insurance company cannot be regarded as having insured an aviator when it issued a policy on a clerk," a less hazardous work or undertaking, but no such question is raised in this case.

But if there was error as contended, which we do not concede, it did the defendant no harm. The verdict was amply sustained by the evidence; and we are satisfied, from a careful study of all the testimony, made in connection

with the clear charge of the trial Judge, that there was no "confusion" in the minds of the jury about what constituted the occupation of the insured.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL, concur.